IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ABILIO JOSUE CHICAS GUEVARA, )
    Plaintiff, )
)
v. ) Civil No. 1:19-cv-110
)
KIMBERLY ZANOTTI, )
    *Washington Field Office Director,* )
    *United States Citizenship &* )
    *Immigration Services,* )
    **Defendant.** )

## MEMORANDUM OPINION

In this declaratory judgment and mandamus immigration case, the parties do not dispute any substantive agency decision resolving plaintiff's application for adjustment of status to that of permanent resident because no such decision has yet been made. Instead, the parties here dispute which entity should make that decision—United States Citizenship & Immigrations Services ("USCIS") at the Department of Homeland Security or the Immigration Court at the Department of Justice. Although the parties' essential dispute is over which entity is the proper decisionmaker, the manner in which that issue is presented in this case is complicated by the remedies plaintiff seeks.

On June 21, 2018, USCIS issued plaintiff a notice advising him that USCIS had administratively closed its proceedings on plaintiff's application for adjustment of status on the ground that USCIS lacked jurisdiction to grant or deny plaintiff's application. In support of its decision, USCIS explained in the notice that the Immigration Court was vested with exclusive jurisdiction to adjudicate plaintiff's adjustment application pursuant to 8 C.F.R. § 1245.2(a)(1)(i) because plaintiff (i) was a respondent in a removal proceeding and (ii) was not an arriving alien. Rather than pursuing substantive review of USCIS's decision, plaintiff brought the instant action

1

seeking (i) declaratory judgment pursuant to the Declaratory Judgment Act[1] that plaintiff is an "arriving alien"[2] within the meaning of 8 C.F.R. § 1.2 and (ii) an order pursuant to the Administrative Procedures Act[3] and the Mandamus Act[4] compelling USCIS to adjudicate plaintiff's adjustment of status application.

At issue now is defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. In the motion, defendant argues that pursuant to 8 C.F.R. § 1245.2(a)(1)(i), USCIS lacked jurisdiction to adjudicate plaintiff's adjustment of status application because plaintiff was not an "arriving alien" when he was placed into removal proceedings. Thus, according to defendant, (i) plaintiff lacks standing with respect to Count 1 because a declaration that plaintiff is presently an "arriving alien" would not redress plaintiff's claimed injury, *i.e.* refusal by USCIS to adjudicate plaintiff's application for adjustment of status, and (ii) the relief sought in Count 2, *i.e.* ordering USCIS to adjudicate plaintiff's application, is moot because USCIS has adjudicated the application to the extent permitted under the regulations.[5] Defendant's motion has been fully briefed and argued and is thus ripe for disposition. For the reasons that follow, (i) plaintiff lacks standing with respect to Count 1 because the relief plaintiff seeks would not redress plaintiff's claimed injury and (ii) the relief sought by plaintiff in Count 2 is moot.

---

[1] 28 U.S.C. § 2201 *et seq.*

[2] The term "arriving alien" is defined by the regulations under the Immigration and Nationality Act as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1.2.

[3] 5 U.S.C. § 701 *et seq.*

[4] 28 U.S.C. § 1361.

[5] In the instant motion, defendant also moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. It is unnecessary to address or decide whether dismissal is warranted under this additional ground because, for the reasons stated *infra*, subject matter is lacking with respect to both Counts of the Complaint.

2

I.[6]

Plaintiff, a citizen and national of El Salvador, entered the United States when he was ten years old, in or around November 2000. Compl. ¶¶ 3, 6. On February 18, 2012, the Bureau of Immigration and Customs Enforcement ("ICE") initiated removal proceedings against plaintiff in the Immigration Court located in Arlington, Virginia by issuing plaintiff a Notice to Appear. *Id.* ¶13; Mem. of Law in Supp. of Def.'s Mot. to Dismiss, Ex. A, Dkt. 7-1 ("DEX A"). The Notice to Appear alleged the following:

1. You are not a citizen or national of the United States;

2. You are a native of El Salvador and a citizen of El Salvador;

3. You arrived in the United States at or near Unknown Location; at or about unknown date.

4. You were not then admitted or paroled after inspection by an Immigration Officer.

DEX A. Based on those allegations, ICE charged plaintiff with being removable from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), "in that [he was] an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*

On December 11, 2012, the presiding Immigration Judge administratively closed the removal proceedings against plaintiff to allow him to apply for relief under the Department of Homeland Security's Deferred Action for Childhood Arrivals ("DACA") policy.[7] Compl. ¶ 14.

---

[6] A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) must be granted "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647. Accordingly, the following undisputed facts are drawn from plaintiff's Complaint and from the records pertaining to plaintiff's immigration proceedings before USCIS and the Immigration Court.

[7] The DACA policy was established by a memorandum issued by the Secretary of Homeland Security on June 15, 2012. *See Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 692 (4th Cir. 2019). Through DACA, certain noncitizens who came to the United States as children could receive deferred action—*i.e.* "a decision by

Thereafter, USCIS approved plaintiff for deferred action under DACA. *Id.* ¶ 15. Plaintiff has since successfully renewed his grant of deferred action under DACA twice, and plaintiff's current term of deferred action extends until March 2021. *Id.*; Mem. of Law in Supp. of Def.'s Mot. to Dismiss, Ex. C, Dkt. 7-1. In February 2014, the presiding Immigration Judge entered an order providing that plaintiff's removal proceedings would remain administratively closed. Mem. of Law in Supp. of Def.'s Mot. to Dismiss, Ex. D, Dkt. 7-1. The Immigration Judge's order further provided that if the parties desired "further action on this matter, at any time hereafter, a written motion to recalendar the case . . . must be filed with the . . . Immigration Court." *Id.*

At some point after plaintiff received deferred action under DACA, plaintiff applied to USCIS for advanced parole to allow him to travel to El Salvador and return to the United States. Compl. ¶ 16. USCIS approved plaintiff's application for advanced parole on November 10, 2016. *Id.* ¶ 17 & Ex. 1. This grant of advance parole allowed plaintiff to travel outside the United States on a single occasion during the following forty-five days, or until December 25, 2016, and authorized officers of United States Customs and Border Protection ("CBP") to parole plaintiff into the United States upon his return. *Id.* Ex. 1. USCIS also notified plaintiff that if CBP paroled plaintiff into the United States, plaintiff's removal proceedings would "generally continue to be deferred," and that "deferral will continue until the date specified by USCIS or [ICE] in [his] deferral notice or until the decision to defer removal action in [his] case has been terminated, whichever is earlier." *Id.*

---

Executive Branch officials not to pursue deportation proceedings against an individual or class of individuals otherwise eligible for removal from this country." *Id.* at 691–92. More specifically, DACA provides for renewable two-year terms of deferred action from removal and authorization for employment. *Id.* at 692. Hundreds of thousands of individuals have applied for and received grants of deferred action under DACA. *Id.* at 690–91.

4

Plaintiff travelled to El Salvador between November 18 and 21, 2016. *Id.* ¶ 18. Upon plaintiff's return to the United States at Dulles International Airport, a CBP officer paroled him into the United States. *Id.* ¶ 19.

On June 5, 2017, plaintiff filed an application with USCIS to adjust his status to that of lawful permanent resident (Form I-485). *Id.* ¶ 21. USCIS interviewed plaintiff on the adjustment of status application on March 16, 2018. *Id.* ¶ 22. On June 21, 2018, USCIS issued plaintiff a Notice of Administrative Closure notifying plaintiff that USCIS was "administratively closing [plaintiff's] application because USCIS does not have jurisdiction to adjudicate" the application for adjustment of status. *Id.* ¶ 23 & Ex. 3. The Notice cited 8 C.F.R. §§ 245.2(a) and 1245.2(a) and explained:

> USCIS has jurisdiction to grant adjustment only if the Immigration Judge does not have jurisdiction. [. . .] The Immigration Judge has jurisdiction to grant or deny a Form I-485 in any case in which the applicant (other than an "arriving alien") is a respondent in a . . . removal proceedings before the U.S. Department of Justice, Executive Office for Immigration Review (EOIR).

*Id.* Ex. 3. Accordingly, USCIS advised plaintiff that because plaintiff was "a respondent in a removal proceeding" and was "not an 'arriving alien' only EOIR has jurisdiction to grant or deny [plaintiff's] Form I-485." *Id.* USCIS further directed plaintiff to "submit [his] Form I-485 to the Immigration Judge in EOIR proceedings." *Id.*

## II.

In Count 1 of the Complaint, plaintiff seeks declaratory judgment that plaintiff is an "arriving alien" based on the fact that CBP paroled plaintiff into the United States when plaintiff returned to the United States at Dulles Airport on November 21, 2016. In other words, plaintiff does not contend that he was an "arriving alien" when he first entered the United States in or around November 2000 or when plaintiff was placed in removal proceedings on February 18,

2012. Rather, plaintiff seeks to establish that he was an "arriving alien" as of November 21, 2016, prior to the date on which plaintiff filed his application for adjustment of status, *i.e.* June 5, 2017.

In the motion to dismiss, defendant argues that subject matter jurisdiction is lacking with respect to Count 1 because plaintiff lacks Article III standing to pursue such relief. In particular, defendant argues that plaintiff lacks standing because a declaration that plaintiff is now considered to be an "arriving alien" would not redress plaintiff's claimed injury, namely the lack of a decision on the merits of plaintiff's adjustment of status application by USCIS.

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases or controversies." U.S. CONST. art. III; *see Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990). And it is well-established that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate standing, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, *that the injury will be redressed by a favorable decision.*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (quoting *Lujan*, 504 U.S. at 560–61) (emphasis added).

Here, plaintiff lacks standing because a favorable decision in this action that granted plaintiff the relief he seeks would not redress the injury claimed by plaintiff. Specifically, a declaration that plaintiff is at present an "arriving alien" would not redress the lack of an adjudication of the merits of plaintiff's adjustment of status application by USCIS because such a declaration would not support an exercise of jurisdiction by USCIS to approve or deny plaintiff's application under the governing regulations.

The regulations under the Immigration and Nationality Act provide that "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 CFR 1245.2(a)(1)." 8 C.F.R. § 245.2(a)(1). Section 1245.2(a)(1) of the regulations, in turn, specifies in pertinent part:

> In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.

*Id.* § 1245.2(a)(1)(i). In short, the applicable regulations provide that the Immigration Court has exclusive jurisdiction—and thus USCIS lacks jurisdiction—to adjudicate an adjustment of status application that is filed by "any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien)." *Id.*

At issue here, then, is the proper interpretation of the exception "other than as an arriving alien" in § 1245.2(a)(1)(i), which, if applicable, preserves USCIS's jurisdiction to adjudicate an alien's adjustment of status application even if the alien has been placed in removal proceedings. In this regard, plaintiff argues that USCIS has jurisdiction to adjudicate an alien's adjustment of status application if the alien was an "arriving alien" when he submitted the application, even if the alien was not an "arriving alien" when he was placed in removal proceedings. Defendant, in contrast, argues that USCIS has jurisdiction only if the alien was an "arriving alien" when he was placed in removal proceedings, regardless of whether the alien is considered to be an "arriving alien" at some later point in time.

It is well-established that the interpretation of statutory or regulatory language begins with an examination of the plain language of the statute or regulation itself. *See Conn. Mut. Bank v.*

7

*Germain*, 503 U.S. 249, 253–54 (1992); *Shaw v. Sessions*, 898 F.3d 448, 455 (4th Cir. 2018).[8] And as the Supreme Court has explained, when the text is unambiguous, the inquiry "ends there as well." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). Similarly, courts "should give effect to every word of a statute whenever possible." *Carroll v. Logan*, 735 F.3d 147, 152 (4th Cir. 2013); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute, we are obliged to give effect, if possible, to every word Congress used.").

With these principles in mind, analysis returns to the interpretation of 8 C.F.R. § 1245.2(a)(1)(i), which, again, provides:

> In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.

It is first important to recognize that the parenthetical phrase "other than as an arriving alien" modifies the preceding clause "any alien who has been placed in deportation proceedings or in removal proceedings."[9] Thus, the plain language of the regulation makes clear that the phrase "other than as an arriving alien" refers to the alien's status at a point in the past, not in the present, namely when the alien was placed into removal proceedings.[10] In the language of the regulation,

---

[8] The Fourth Circuit has made clear that principles of statutory interpretation apply fully to the interpretation of regulatory language. *See Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012) (citing *Textron, Inc. v. Comm'r*, 336 F.3d 26, 31 (1st Cir. 2003); *see also Karczewski v. DCH Mission Valley, LLC*, 862 F.3d 1006, 1016 n.4 (9th Cir. 2017) ("[W]e regularly hold that a generic canon of statutory interpretation applies equally to regulations.") (internal quotation marks omitted).

[9] *See Disabled in Action v. Southeastern Pa. Transit Auth.*, 539 F.3d 199, 212 (3d Cir. 2008) ("The phrase 'or to ensure that the alterations are made' appears in parentheses immediately following the phrase 'to fail to make such alterations,' indicating that the meaning of the former phrase is related to, or dependent upon the latter.").

[10] The clause "any alien who *has been placed* in deportation proceedings or in removal proceedings" uses the present perfect tense, which refers to "(1) a time in the indefinite past . . . or (2) a past action that comes up to and touches the present.'" *Dobrova v. Holder*, 607 F.3d 297, 301–02 (2d Cir. 2010) (quoting CHICAGO MAN. STYLE ¶ 5.119 (15th ed. 2003)). Thus, because the phrase "other than as an arriving alien" modifies the clause "any alien who has been placed in deportation proceedings or in removal proceedings," and because the latter refers to a past event by using the present perfect tense, "other than as an arriving alien" refers to the alien's status when the past event occurred.

8

if the alien "has been placed in . . . removal proceedings . . . *as an arriving alien*," then USCIS and not the Immigration Court has jurisdiction to adjudicate the adjustment of status application. But if the alien "has been placed in . . . removal proceedings . . . *other than as an arriving alien*," then the Immigration Court has jurisdiction, not USCIS. Put simply, the plain language of the regulation is unambiguous and confirms that USCIS has jurisdiction to adjudicate an adjustment of status application filed by an alien who has been placed in removal proceedings only if the alien was an "arriving alien" when he was placed in removal proceedings.

This conclusion is reinforced by the fact that plaintiff's proposed interpretation of § 1245.2(a)(1)(i)—that USCIS has jurisdiction to adjudicate an alien's adjustment of status application if the alien was an "arriving alien" when he submitted the application—requires the reader to ignore the word "as" that appears in the regulatory provision. To demonstrate, the text of § 1245.2(a)(1)(i) is reproduced with the word "as" excised:

> In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than [ ] an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.

Without the word "as", plaintiff's reading of § 1245.2(a)(1)(i) becomes plausible; as modified, the focus of the parenthetical exception is the alien's status in general, not the alien's status at the time he was placed in removal proceedings. But, of course, a district court cannot eliminate a word from a regulation. *See Carroll*, 735 F.3d at 152. And as discussed above, when § 1245.2(a)(1)(i) is read in its entirety, the regulation's clear and unambiguous mandate is that USCIS has jurisdiction to adjudicate an adjustment of status application filed by an alien who has been placed in removal proceedings only if the alien was an "arriving alien" when he was placed in removal proceedings.

In sum, the regulatory language is clear. It assigns jurisdiction to either USCIS or the Immigration Court based on whether the alien was an "arriving alien" at a given point in time,

namely when the alien was placed in removal proceedings. Accordingly, because USCIS's jurisdiction depends on plaintiff's status at the time his removal proceedings were initiated, a declaration that plaintiff is considered to be an "arriving alien" as of the date CBP paroled plaintiff into the United States, which occurred after plaintiff was placed in removal proceedings, would not redress the injury claimed by plaintiff. In short, such a declaration would not redress the lack of an adjudication of the merits of plaintiff's adjustment of status application by USCIS because USCIS would still lack jurisdiction to approve or deny plaintiff's application even if plaintiff is now declared to be an "arriving alien." Therefore, because a favorable decision would not redress plaintiff's injury, plaintiff lacks standing with respect to Count 1.

Seeking to avoid this result, plaintiff argues that the interpretation of § 1245.2(a)(1)(i) adopted here (i) contradicts the Board of Immigration Appeal's ("BIA") previous interpretation of the regulation (ii) and upholds USCIS's determination that it lacked jurisdiction on a ground different from the one relied upon by USCIS. Neither of these arguments is persuasive.

Plaintiff first contends that the BIA's decision in *Matter of Yauri*, 25 I. & N. Dec. 103 (BIA 2009) compels the conclusion that § 1245.2(a)(1)(i) grants USCIS jurisdiction to adjudicate an alien's adjustment of status application if the alien was an "arriving alien" when he submitted the application.[11] More specifically, plaintiff appears to argue that the BIA's holding in *Matter of Yauri*, 25 I. & N. Dec. at 107, that USCIS had jurisdiction over an application filed by an alien in removal proceedings "because the [alien] is an arriving alien" supports plaintiff's proposed interpretation of § 1245.2(a)(1)(i) because the BIA described the alien's status using the present tense and did not reference the alien's status at the time she was placed in removal proceedings.

---

[11] Plaintiff also cites to two unpublished decisions by the BIA and the USCIS Policy Manual, which are distinguishable and uninstructive here for the same reasons as *Matter of Yauri*. See *In Re Paz Munoz*, 2018 WL 1897748, at *2 (BIA Feb. 12, 2018); *In Re Saint Fleur*, 2017 WL 1130651, at *2 (BIA Feb. 2, 2017); USCIS Policy Manual, Vol. 7, Ch. 3, § D.

This argument fails. First, *Matter of Yauri* is not instructive vis-à-vis the question presented in the instant case. There, the BIA in no way addressed the issue whether USCIS possesses jurisdiction to adjudicate an application filed by an alien who was not an "arriving alien" when placed in removal proceedings but subsequently became an "arriving alien." Second, the mere fact that the BIA chose to use the present tense to describe the alien's status in *Matter of Yauri* is not controlling. The proper interpretation of § 1245.2(a)(1)(i) is governed by the language used in the regulation, which for the reasons already stated, points persuasively to the interpretation of the regulation adopted here. Thus, because the BIA in *Matter of Yauri* did not come close to addressing the issue of regulatory interpretation raised in this case, the language used by the BIA there is neither instructive nor controlling here.

Plaintiff's second argument is that the interpretation of § 1245.2(a)(1)(i) adopted here upholds USCIS's administrative closure of its proceedings on plaintiff's adjustment of status application for reasons different from those relied upon by USCIS, in violation of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943). *See id.* at 87 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). This argument fails for three reasons.

First, as an initial matter, although neither party addressed this issue, it is plainly evident that the *Chenery* rule has no bearing on the instant action, which does not involve a review of USCIS's decision. As the Supreme Court in *Chenery* explained, the holding there was simple: "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Id.* at 95. In this case, plaintiff's claims do not call for review of USCIS's decision to close proceedings on plaintiff's adjustment of status application, and, indeed, the holding reached here does not uphold or vacate

any such decision by USCIS. To the contrary, plaintiff has brought claims here for (i) declaratory judgment that plaintiff is an "arriving alien" and (ii) mandamus directing USCIS to adjudicate plaintiff's application. True, resolution of the issue whether plaintiff has standing to pursue these claims turns on an inquiry similar to that conducted by USCIS below, namely whether the regulations vest USCIS or the Immigration Court with jurisdiction to adjudicate plaintiff's application. But because this action does not entail an appellate review of USCIS's decision to close proceedings on plaintiff's adjustment of status application, analysis here is not limited to the grounds cited by the USCIS decision under the *Chenery* rule.

Second, even if *Chenery* does apply here, the *Chenery* rule is not violated because the grounds relied upon by USCIS do not differ from the reasons cited here in support of USCIS's decision to close proceedings on plaintiff's application. In the Notice of Administrative Closure issued to plaintiff, USCIS explained that it was "administratively closing [plaintiff's] application because USCIS does not have jurisdiction to adjudicate" the application for adjustment of status. Compl. Ex. 3. Importantly, the Notice summarized 8 C.F.R. §§ 245.2(a) and 1245.2(a) and then stated that because "you are a respondent in a removal proceeding, and you are not an 'arriving alien' only EOIR has jurisdiction to grant or deny your Form I-485." *Id.* It is therefore clear that USCIS justified its action on the same grounds recited here, namely that USCIS lacks jurisdiction to adjudicate plaintiff's application because plaintiff is in removal proceedings and was not an "arriving alien" when he was placed in removal proceedings. To be sure, it is true, as plaintiff notes, that USCIS did not specify in as many words that plaintiff was not an "arriving alien" at the time his removal proceedings were initiated. But USCIS likewise did not state that its conclusion was based on plaintiff's status at some later point in time. In sum, although the imprecise language used by USCIS does not perfectly mirror the interpretation of § 1245.2(a)(1)(i) adopted here,

USCIS's reliance on the regulation and its ultimate conclusion indicate that USCIS did not rely upon a different ground than the reasons on which its decision is upheld here.

Third, even assuming both that *Chenery* applies to this case and that USCIS relied upon different reasons than those explained here to support USCIS's decision, it is clear that *Chenery* is not violated when agency action is affirmed based on a legal conclusion that the agency did not articulate. The Supreme Court limited the *Chenery* rule to situations where the agency failed to make a "determination of policy or judgment which the agency alone is authorized to make." *Chenery*, 318 U.S. at 88; *see Arkansas AFL-CIO v. F.C.C.*, 11 F.3d 1430, 1440 (8th Cir. 1993). Thus, the Fourth Circuit has made clear that there is no "*Chenery* problem" when a district court affirms agency action based on a purely legal issue, such as the interpretation of a federal statute or regulation, because such a question "is not a determination or a judgment which an administrative agency alone is authorized to make." *N.C. Comm'n of Ind. Affairs v. U.S. Dep't of Labor*, 725 F.2d 238, 240 (4th Cir. 1984) (internal quotation marks omitted).[12] These principles point persuasively to the conclusion that even if USCIS based its decision on different reasons than those explained here, remand is not required pursuant to *Chenery* because USCIS's decision to close plaintiff's application is upheld here based on a purely legal issue, namely the interpretation of 8 § C.F.R. 1245.2(a)(1)(i).

Accordingly, plaintiff's attacks against the interpretation of § 1245.2(a)(1)(i) adopted here are meritless and fail to alter the conclusion that plaintiff lacks standing to bring Count 1 of the Complaint.

---

[12] *See also* Yanez-Marquez v. Lynch, 789 F.3d 434, 461 (4th Cir. 2015) (holding that "where, as here, we are dealing with a purely legal conclusion . . . a remand is not compelled" pursuant to *Chenery*); *Bass v. Vilsack*, 595 Fed. Appx. 216, 220 n.2 (4th Cir. 2014) ("While generally a reviewing court may only judge the propriety of an agency decision on the grounds invoked by the agency, the court is not so bound when . . . the issue in dispute in the interpretation of a federal statute.") (internal citations omitted).

## III.

In Count 2 of the Complaint, plaintiff seeks an order compelling USCIS to adjudicate plaintiff's adjustment of status application. In response, defendant argues that subject matter jurisdiction is lacking with respect to Count 2 because USCIS's lack of jurisdiction to adjudicate the application renders the claim moot.

The "mootness doctrine" instructs that Article III's "case or controversy" requirement is not satisfied when a case becomes "moot," that is, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003) ("The requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action."). Of particular relevance here, courts have concluded that a plaintiff's request for an order compelling USCIS to adjudicate the plaintiff's adjustment application is moot if "USCIS has already administratively closed and dismissed his application consistent with its lack of jurisdiction, due to [the plaintiff]'s status as an alien in removal proceedings who is not considered an arriving alien." *See, e.g.*, *Gonzalez v. Mayorkas*, No. 1:13-CV-1230, 2014 WL 585863, at *6 (E.D. Va. Feb. 12, 2014), *aff'd sub nom. Gonzalez v. Zannotti*, 585 F. App'x 130 (4th Cir. 2014); *see also Akinmulero v. Holder*, 347 F. App'x 58, 60 (5th Cir. 2009). This is so because under such circumstances, "USCIS has already adjudicated petitioner's application for adjustment of status to the extent permissible under binding federal regulations." *Mohammed v. Holder*, 695 F. Supp. 2d 284, 289 (E.D. Va. 2010).

These authorities confirm that Count 2 of the Complaint is moot. For the reasons already explained, *supra* part II, USCIS lacks jurisdiction to adjudicate plaintiff's application for adjustment of status because plaintiff is an "alien who has been placed in . . . removal proceedings"

and was not so placed "as an arriving alien." 8 C.F.R. § 1245.2(a)(1)(i). Under the applicable regulations, USCIS can adjudicate plaintiff's application no further. Accordingly, plaintiff's request in Count 2 for an order compelling further adjudication of his application by USCIS is moot because "USCIS has already adjudicated petitioner's application for adjustment of status to the extent permissible under binding federal regulations." *Mohammed*, 695 F. Supp. 2d at 289.

## IV.

To summarize, the plain, unambiguous language of 8 C.F.R. § 1245.2(a)(1)(i) makes clear that USCIS has jurisdiction to adjudicate an adjustment of status application filed by an alien who has been placed in removal proceedings only if the alien was an "arriving alien" as defined by 8 C.F.R. § 1.2 at the time he was placed in removal proceedings. It is undisputed that plaintiff was not an arriving alien when he was placed in removal proceedings on February 18, 2012. Accordingly, § 1245.2(a)(1)(i) vests exclusive jurisdiction to adjudicate plaintiff's application with the Immigration Court, not with USCIS. Plaintiff thus lacks a redressable injury in this action, in which plaintiff seeks (i) a declaration that he became an "arriving alien" subsequent to being placed in removal proceedings and (ii) an order compelling USCIS to adjudicate his application on the merits. Accordingly, subject matter is lacking with respect to plaintiff's claims, and the Complaint must therefore be dismissed.

Importantly, this holding does not preclude plaintiff from obtaining the relief he ultimately seeks, namely adjustment of status to permanent resident—to which he may be entitled. But plaintiff must take steps to pursue this aim with the proper adjudicatory body under the regulations. As plaintiff was clearly and correctly instructed by USCIS, plaintiff must submit his application for adjustment of status to the Immigration Judge presiding over his removal proceedings.[13]

---

[13] Although plaintiff's removal proceedings have been administratively closed, plaintiff's may easily pursue further action—such as adjudication of his adjustment of status application—in those proceedings by filing a motion with

15

An appropriate order will issue.

Alexandria, Virginia
August 5, 2019

/s/
T. S. Ellis, III
United States District Judge

---

the Arlington Immigration Court to recalendar the case, as plaintiff was previously advised by the Immigration Judge presiding over his removal proceedings. *See Matter of Castro-Tum*, 27 I. & N. Dec. 271, 273 (AG 2018) ("Cases that have been administratively closed absent a specific authorizing regulatory provision or judicially approved settlement shall be recalendared upon motion of either party.").